We will hear argument first this morning in Case No. 15-1256, Nelson v. Colorado. Mr. Banner. Mr. Chief Justice, and may it please the Court, when a judgment is reversed, a person who has paid money pursuant to the judgment is entitled to get the money back. That's common sense, and that has, unsurprisingly, been normal practice for centuries. As far as we can tell, Colorado is the first State ever to adopt a rule to the contrary. In Colorado now, when a judgment of conviction is reversed, the State keeps the defendant's money unless the defendant files a separate civil action and can prove by clear and convincing evidence that she's actually innocent. Ginsburg. What is the basis of the right? You said the person whose conviction is overturned has a right to get the money back. Is it a constitutional right? What kind of right is it? It's a right under the common law of property that's existed for centuries. That is, it has always been the case that a successful appellant gets her money back. In this case, the money was taken from Shannon Nelson and Lewis Madden pursuant to criminal convictions. But those are the same. Kennedy. It has to be constitutional if Colorado says we don't want to follow the common law. This is not the law here. Well, but here. So if it's not constitutional, then what's the basis for your case? No. So here, the Colorado Supreme Court did not say that this money belongs to the State of Colorado. Rather, the Colorado Supreme Court said the Exoneration Act is a good enough remedy for returning the money to Nelson and Madden. You're absolutely right, though, to say that if the Colorado Supreme Court had said it doesn't matter what process we use because it's not their property, it's the State's property. If the Colorado Supreme Court had said that, then you're right. Then we would be having to say, making an argument that the Constitution itself gives the money, gives the right to the money to Nelson and Madden. Sotomayor, make that argument. Excuse me? Make that argument. Okay. So if Colorado – if the Colorado Supreme Court had said that this money belongs to the State rather than to Nelson and Madden, that would be tantamount to charging people money for the privilege of trying them unlawfully, right? It would be the State taking money as a result of a trial that has been reversed, a trial that was conducted unlawfully. That would be the case. Sotomayor, the dissent here said something quite simple, which was the only entitlement to the money was the conviction. Correct. If the conviction has been voided, then what legal right does the State have to retain the money? We agree with that exactly. The Colorado Supreme Court, on the other hand, said when you paid the money, we were entitled to it. So where – there's a disconnect there. If they were entitled to it initially, we're still back to the operative question of why are they entitled – what is the constitutional right for you to get it back? The State was entitled to the money initially because there were judgments of conviction in place, judgments of conviction that required the payment of the money. Those judgments of conviction no longer exist. They were reversed on appeal. Shannon Nelson was retried and was acquitted of all charges. Lewis Madden, convictions were reversed and the prosecutor declined to retry the case. And so while it was the State's money while the convictions existed, once those judgments of conviction ceased to exist, at that point it's no longer the State's money. At that point – Alitono, I thought your argument was this, but what you're saying now in a lot of your brief is much more complicated. But the simple argument I thought was this. This was your client's money. It's a certain amount of dollars, okay? It was taken away from them as a result of a trial that was flawed, and therefore they were deprived of that property without due process of law. I thought that was the argument. Am I right or not? Sotomayor You're right. Alitono Okay. Now, if that is the argument, there are two complications that I see in your briefing. One is that you concede that they could be denied restitution for equitable reasons. Let's just take that. Where else in the law of due process would something like that come up? Lewis Madden The reason why we said that is that in several of this Court's older cases, the Court describes these refunds as equitable. Now, in a garden variety, in garden variety criminal cases like this one, there would be no equitable considerations that would interfere with a refund of the money. But there are – it's possible to imagine other sorts of cases where it would. And so, for example, the Court has – this Court mentioned, as we say in the reply brief, this Court mentioned an example in which an insurance case, in which a refund, a full refund, would provide overcompensation for some reason to the successful appellant, and in such a case, the refund for equitable reasons would have to be scaled back. In an ordinary criminal case like ours, there's nothing like that. Those sorts of equitable considerations are very, very far from a case like this one. And, you know, Colorado talks about this. Kagan If that's right, and this is the basic argument, it's our money by virtue of State law, and once the conviction disappears, why doesn't the State have to proactively return the money? In other words, why is it even required for the person to bring any kind of refund action against the State? Bursch No, no. The State does proactively have to refund the money. There is no requirement for the successful appellant to bring an action. Rather, what the – Kagan The argument is not to the nature of this action and to exactly what you have to prove. You're saying that as soon as the conviction is vacated, the State has to put a check in the mail. Bursch Well, okay. That may be a little too – a little too simple. So the – in our view, the – the a-proper procedure would be the procedure that was followed in these cases, where after – in Shannon Nelson's case, after she was acquitted, she filed a motion back in the original trial court saying, look, I've been acquitted, please give me my money back. Kagan No, I guess I'm asking, if your theory is right, why is even that necessary? If your theory is right, it seems – I mean, you know, you might file a motion because the State hasn't done what it's supposed to do, but it seems as though the obligation on the State's part is immediately to put a check in the mail. Bursch No, that's right. That's right. That's right. And so when that hadn't happened, after several months, we filed the motions in both cases. Roberts I thought the other – I was just saying, I understood you in responding to Justice Alito to say that the State had to give the money back because they'd acquired it as a result of a flawed prosecution. Is that right? Bursch Right. Roberts Well, that's not true for some of the payments. You know, there's a $30 docket fee. In other words, that's not something that depends upon whether the conviction is valid or not in the normal case. Bursch Yes. Well, in – under the – all of these payments under Colorado law are collected only from defendants who are convicted. Roberts Including the docketing fee? Bursch Including the docketing fee. None of these – none of these fees, charges, et cetera, are the sorts of sort of filing fees that are collected from any litigant win or lose. There's nothing like that in this case. This is all money that is contingent upon the existence of a conviction. Alito The other complication that I see in this make-whole argument, in other words, the State took things away from you, they took property away from you, and when the conviction is reversed, they have to restore you to the position you were in before the prosecution, is this. The restitution and all of these fees are small in comparison with the main thing that was taken away, and that was – that was liberty. So if your argument is correct, why shouldn't this – what – didn't the State – the State took away your client's liberty without due process of law, so would they be automatically entitled to be made whole in that respect? No. And the reason – Why not? The reason for that is that while there's a long historical tradition of providing refunds of monetary payments upon the reversal of a conviction, there is no comparable tradition of providing compensation for periods of lost liberty. That's why Colorado passed the exoneration. Exactly. Exactly. If there already was a tradition of providing compensation for lost liberty, there should be no need for statutes like exoneration. Well, if tradition – I mean, if tradition like that can defeat the argument for compensation for time wrongfully spent in prison, then can tradition defeat the argument that you make with respect to the fees and the restitution? No, because the tradition is – is the – the normal practice for centuries has been to refund monetary payments that are contingent upon a judgment when that judgment is reversed. Okay. So the argument is tradition could do it if there were such a tradition. If there were such a tradition, if the tradition were the opposite, right. And so it's an interesting point. If we look at the tradition, again, it seems to me for constitutional reasons, not for State law reasons. That's why I'm somewhat confused. I mean, who cares about tradition if the State says X and the tradition is Y, unless there's a constitution? No, that's right. That's right. That's right. And so – and so tradition – tradition comes in, you know, in determining what process is due. Courts always – always look to tradition. Tradition is always a – a factor in considering what process is due. Well, getting back to the State law for a moment, are you saying that if a State creates a right under State law, it cannot unduly complicate that right by flawed procedures under our procedural due process jurisprudence? Well, I'd say it even more simply than that. I would say that when a State is holding on to property that belongs to one of its citizens, the State has an obligation to have a procedure that is adequate for returning the property. I mean, that's – that's the error that we're complaining about in the Colorado Supreme Court below. The Colorado Supreme Court said the – the Colorado Supreme Court analyzed this as a case. The Court said the question is, is the Exoneration Act a good enough procedure for returning this money to Nelson and Madden? The Colorado Supreme Court applied Matthews v. Eldridge and the State cases following Matthews v. Eldridge. And the Colorado Supreme Court determined, yes, this is a good enough process for returning the money to Nelson and Madden. Well, then your – I think your argument has moved from the simple one I started out with, which is that you're absolutely entitled to be made whole, to the argument that they have to provide – that we look to tradition and we have to see what sort of tradition is adequate. So what would be an adequate procedure here? They have to be made whole. I guess – I don't think I'm saying anything different from what you're saying. I'm saying that what the due process clause requires is for Colorado to provide a process adequate to make defendants whole when their convictions are reversed. So what is that process, after the conviction is reversed? Simply – simply to refund the money. It's their money. Colorado can't make defendants have to prove that they're actually innocent in order to get their own money back. Sotomayor, let's take the Act. Yeah. What parts of the procedure of the Act are you saying violate due process? Well, the requirement of proving one's innocence in order to get one's own money back. That's the most – that's the most obvious one. It would seem to me that if the State had an equitable reason, it should prove it, not you. Oh, exactly. Exactly. And as I've said, the State talks a lot in very general terms about equitable principles, but the State has yet to identify what equitable principle entitles it to determine. Do you think the requirement to start a separate civil action comports with due process? That's a – that's a harder question. So let's imagine a requirement that you have to file a separate civil action, but all you have to prove is that your conviction was reversed, right? If it was something that ministerial, maybe, maybe that would satisfy due process. Although, even there, I suppose it would be hard to see what purpose would be served by such an action when you can still get it. You'd have to pay a filing fee, you'd have to engage a lawyer, and we're talking about hundreds of dollars, not even $1,000 in one case. So if any – it seems to me any requirement that you sue to get the money back I agree. I agree. As I was saying, it would have to be a very streamlined, some very streamlined, very easy sort of civil action, but that would be pointless. I mean, it would be hard to see what purpose would be served by requiring such an action. I'm agreeing with you. What purpose would be served by that when you can just do what appellants have been doing, successful appellants have been doing for centuries, which is going back to the trial court and saying, okay, judgment reversed, please give us our money back. Sotomayor, assume you apply the Matthews framework. Do you agree that the Court got it right, or do you think even under Matthews the Court below got it wrong? Oh, no. Under Matthews, the Court got it terribly wrong. I mean, the Colorado Supreme Court's application of Matthews was basically to say due process requires some kind of a hearing. Well, the Exoneration Act, that gives you some kind of a hearing, so good enough. If you look at the Matthews factors one by one, they all point very, very strongly in favor of finding the Exoneration Act an inadequate remedy. It's the first of all, this is the defendant's property, not the State's property. Second of all, this is a terrible procedure for returning property to successful appellants. The Exoneration Act was not really intended to serve that purpose. It doesn't serve that purpose at all. It's virtually ensures that successful appellants aren't going to get their money back when their convictions are reversed. And finally, it's impossible to see what interest the State has in holding on to this money, right? Nelson, Shannon Nelson, she was acquitted. Lewis Madden, his convictions were reversed. There's no chance that either of these defendants will ever be reprosecuted. This money will never belong to Colorado. Colorado has yet to explain what interest it has in preventing this money from being returned. Kennedy, if we're right in this opinion, and we begin, tradition is very important here because? Well, in the Court's due process cases, the Court has often said that tradition is very important. That's if we're trying to define the substantive right. Yeah, right, and also in determining what process is due. And so the fact that successful appellants have always gotten their money back, I mean, that is the tradition that we're invoking. And tradition is important in due process cases because, you know, in determining what process is due and determining what's the law of the land, well, what better place to look than what the law of the land has always been. Well, so that's a different analysis than the Matthews analysis, though. Correct. You know, the thing about this case is that what Colorado's doing here has never been done before. So there are no precedent directly on point at a very high level of specificity. So we have to look to other lines of the Court's due process precedent. That's what we've done. It seems, Mr. Bannery, that you could be approaching this in two ways. I mean, one is you could be claiming a substantive due process right along the lines that Colorado said you were doing, and then you came back and said no. Now, if you were suggesting that you had a substantive due process right, then surely tradition would be important. That's right. But in – if you're looking at procedural due process, I would have thought that your argument is the simple one of this is property under State law. It's my property. It's your client's property. And then we apply the Matthews test to determine what kind of procedure is due to get that property back. And tradition wouldn't be any part of it. No, that's right. So looking just at the Matthews test, you're absolutely right. Tradition would not be part of that. But the Matthews test is not the only way the Court has looked at this general class of issues. And as I said, because no State has ever done what Colorado is doing, we're trying to draw from various strands of due process precedent. One strand is the Matthews test, but another strand is the, you know, the cases like Honda Motor and so on that say if a State takes away a procedure that has tradition been present, traditionally been afforded, that's a pretty good sign that the State is violating due process. Ginsburg. What did Colorado do before the Exoneration Act with respect to returning money? Just gave back the money, just like every other jurisdiction. That's right. And so the novelty here is that this case got to the Colorado Supreme Court immediately after the Exoneration Act was enacted. And the Colorado Supreme Court said, oh, now we have a statute that tells how money is supposed to be refunded to exonerated defendants under State law. That must be now the exclusive remedy for defendants to recover the money. But before the Exoneration Act, there was no statute governing this topic, just like in many jurisdictions. And it was just as a matter of routine practice, successful appellants got their money back. Alitoson Well, is that true? I mean, I still don't understand the difference between the simple argument that you're required to be made whole and the argument that a court could deny restitution based on equitable considerations. As this Court has said, which is your argument? You automatically get it back, that's the end of it, you don't need procedure as necessary, or that you could be denied receiving the money back for equitable reasons. You automatically get it back unless there is some equitable reason that you shouldn't get it back. But what I'm trying to say is in an ordinary criminal case like this one, there is no equitable reason why you shouldn't get it back, and it's impossible almost to conceive of an equitable reason. The reason why the State says that you, that the defendant has the obligation to move for a stay of the judgment of restitution when the defendant takes an appeal, and if the defendant doesn't do that, then the money is not refunded. Yeah, that's impossible under State law for indigent defendants to seek a stay of monetary payments pending appeal for two reasons. One is that you have to, to get a stay pending appeal, you have to post a bond in the full amount of the payment. That's way out of reach for any indigent defendant. In fact, we talked to experienced Colorado defense lawyers who say they have never heard ever of any indigent defendant seeking a stay of monetary payments pending appeal. Our clients, indigent defendants, they couldn't have done that. Second, by statute, stays appear to be unavailable where the money is being taken from the, the appellant's inmate accounts, which is the case here. So even, even if they had some sort of money outside of their inmate accounts of the, excuse me, I'm sorry, the money is being taken from the inmate account, so that's a second reason why a stay would be unavailable. I should add, no. Sotomayor, there is a gap between some jurisdictions that don't collect the money until the conviction is final and a conviction that's overturned on collateral review, where the possibility of money having been collected may exist. Should there be a difference in how we think about those two situations? No, because, because whatever the reason for the disappearance of the judgment of conviction, the key thing is that these are, these are, the State's only right to this money is in the judgments of conviction. And so, regardless of the other cases, there is a gap between the two. Sotomayor, I have a problem because there are some cases in our jurisprudence, not in English jurisprudence, but certainly in American jurisprudence, where the payment of restitution to a third party would have been good reason, an equitable reason for the State not to have to return that money. So what do we do? Let me say, let me say a word about restitution. Restitution in the modern sense of restitution, I mean, restitution to victims. Paying the victim. Right, right, right, right. Restitution in, in Colorado is, you can only have restitution pursuant to a criminal conviction. Without a criminal conviction, there can be no restitution. There's no separate proceeding. There's no separate proof apart from the amount of restitution. Otherwise, it's just, it's just part of the sentence. Kagan. What do States generally do if they've collected this money, they've paid it out to the victim, and then the conviction is overturned? Do they usually leave the money with the victim and just take it out of their general treasury, or do States try to take it back from the victim? That, that I do not know. And the thing is, there are, there are very few reported cases raising the issue of refunds of restitution after the reversal of a conviction. And I think the reason must be that restitution, although, restitution to victims, although quite old in principle, really has only been applied in significant amounts recently. Alito, your argument is that if, let's say there's a very substantial judgment of restitution and the money is paid to the victims, let's say they're victims like the ones in this case, so that it's therapy for abuse, and then even after the judgment has become final, if there is, if, if the, if the, if the, if the, if the defendant is given relief on collateral review, the State would have to re, would have to compensate the defendant for all the money that was paid to the victims? That's your argument? I, well, I agree with all of that, except the word compensate. The State would have to refund the amount of money it had taken from the defendant. Remember that, that, I mean, and then as between the State and the victims, that's  no, that's, there's no bearing on the, the property rights or the due process rights of the defendant. Bear in mind that all the money the State collects from convicted defendants, whether denominated restitution or denominated anything else, all of that money the State is spending on something. The State, the State isn't hiding that money under a mattress. All that money, even, even fines paid into a State's general fund, the State is spending that money on something. And so it's, it's no excuse when, to, to, when you, when you owe a debt to say, oh, I already spent the money on something else. Kennedy, Well, you don't have to make that argument to prevail in this case, do you? I think there's some severe equitable problems with, with the, with the hypothetical of the State having paid the, the victim and the victim having spent the money. No, no. You, you misunderstand me. The State is saying, I'm not talking about the victim spending the money. I'm, I meant to be talking about the State saying, well, I'm sorry, we can't, we can't upon the reversal of a conviction, the State's saying, we, we can't refund the money. Sorry, we already disbursed it as restitution to victims. And what I'm saying is, the State disburses all the money it collects for one purpose or another. That doesn't set restitution apart from anything else. If I could reserve the balance of my time. Roberts. Roberts. Thank you, Mr. Banner. General Yardner. Thank you, Mr. Chief Justice, and may it please the Court. The dispositive question in this case is substantive, not procedural. Petitioners are not claiming that they've been denied an opportunity to prove that they are, that they meet the substantive elements of the Colorado Exoneration Act. Their argument is that that act is an inappropriate procedure, that the procedure set out by the Exoneration Act, where they have to prove themselves actually innocent, is a procedure that does not comport with due process. Justice Ginsburg, if I understand Petitioner's argument appropriately, what they're saying is that they shouldn't have to prove actual innocence at all, so those procedures, because they are geared toward and focused on that inquiry, shouldn't have to apply. And what that means is what Petitioner's are arguing is that they have a substantive right to automatic compensation without having to prove anything at all. And so that's why you think that that's just mistaken, Mr. General. They're saying that they have a general State law property right in the money. Now, do you disagree with that? Do you think that this is their money? No, Justice Kagan, that is the nub of the dispute. The question in this case is whether, as a matter of substantive right, this is the State's money. As the Colorado Supreme Court held, you could look at Petitioner's. Well, why is it the State's money? Because, as Petitioner's acknowledged during opening argument, it was properly taken pursuant to a conviction. And the Colorado Supreme Court described this money as public funds. It never said that this is property of the defendant. But it's money that's conditioned on a valid conviction. And when that valid conviction goes away, it seems the most natural, obvious thing in the world to say that the State's right to that money evaporates at exactly the same moment. Why isn't that true? Justice Kagan, it's the same reason that upon reversal of the conviction, certainly the Petitioners can't be subject to that conviction anymore. They have to be released from incarceration, and they cannot be subject to continued imposition of the monetary judgment. But what due process has never held and what this Court's decisions have not held is that the State's money. Kagan I'm not talking about due process. I'm merely just talking about whose money it is. Under State law, State property law, whose money is it? They say it's their money because there's no longer a valid conviction. You say notwithstanding that the valid conviction has been reversed, it's the State's money. I want to know why. The reason why is that, well, first of all, the Colorado Supreme Court described this as public funds. And that's precisely how this Court and other courts have treated this when they encountered the issue of sovereign immunity. So, for example, in United States v. Gettinger, this Court held that claims like these are not return-of-property type claims. They are claims that can be subject to sovereign immunity. And if that is true, it's not property of the criminal defendant after a lawful conviction has been entered. And just sort of describe to me in sort of commonsensical terms, you know, rather than point me to a sovereign immunity case or something, but just in commonsensical terms, why is this the State's money? It's the State's money just as it – just as the State lawfully incarcerated these defendants, and Petitioners don't dispute that. The State lawfully but erroneously took the defendant's liberty away in this case. That was lawful. Same as the Court or the State lawfully took custody of and property in the State's or, excuse me, the criminal defendant's money. And so do you have any obligation to return the money at all pursuant to any procedures? Could you just say once you pay the money, we have no procedure for you to get it back. In fact, we won't give it back to you ever. It's our money. We don't have to give it back. So long as the conviction itself existed at the time that the money was taken, no, the State does not have that obligation, just as it was required to pass the Exoneration Act in order to compensate criminal defendants who were erroneously but not wrongfully convicted. Otherwise, they have to prove that they meet the elements of, for example, a constitutional tort, that they were wronged in some way. Roberts, So if you said instead of the $128 for this, the $30 for that, if you said everybody who is convicted owes the State $10,000, and you don't get it back if you're later – if the conviction is later overturned? That is the rule that this Court has adhered to, and that is precisely the implication of courts that, when deciding these claims, look for waivers of sovereign immunity, because the assumption is that the deprivation of both the liberty and the property at the time of conviction is lawful, and that the property passes into public funds. Ginsburg. Was Mr. Banner wrong then when he told us that before the Exoneration Act, Colorado, like every other State, just gave the money back? He is – that is incorrect, Your Honor. What did Colorado do with respect to monetary sanctions before the Exoneration Act? They didn't have authority to give it back. One example I can give, and there aren't many, is People v. Knoll. It's a Colorado court of appeals case from 2005 where the Court declined to order what they describe as a refund of amounts charged for probation, even though that conviction was later overturned. Now, the chief case they rely upon is Tolan v. Stroll. It's a Colorado case from 1961. And the Court there did order refunds of the fines, but in that case, and as interpreted by the Colorado Supreme Court in this case, there was specific wrongful conduct that violated the Constitution on the part of the justice of the peace that presided over that case. So as the Colorado Supreme Court understands it, that was a case about wrongful conduct on the part of someone adjudicating the case, rather than merely an erroneous conviction that requires the status quo to be restored after that conviction was overturned. Are you denying that there were courts that – lower courts that routinely ordered the refund of these monies? I am, Justice Sotomayor. In – in – I think in the briefing were pointed to any number of situations in which lower courts did order the – or automatically gave – ordered the money to go back. Justice Sotomayor, we're not denying that there are certainly some courts that have done so, but there are many courts that do not treat these claims as return of property claims. They treat them as claims for compensation against the State for which a waiver of sovereign immunity is required. Sotomayor, this is to me a question of labels, and – and if you have no conviction to justify the payment of money because it's been voided, why is it your money now, just simply because you collected it beforehand, even though the basis for the collection is wrong? Well, as Petitioner's How about if you took his car? Well, that that would be a forfeiture situation, and there are other Why isn't this comparable to forfeiture? Well, in fact, the forfeiture proceedings in some cases provide a useful analogy. If the district court orders forfeiture and a – someone with an ownership interest in that property does not properly appeal or seek a stay of the disposition of that forfeited property. Sotomayor, let's go to the stay. Could you – can you honestly say to me that if this defendant had moved for a stay, that the trial court would have granted one? In how many cases do you think of the thousands of convictions that Colorado goes through, would a court order a stay? Justice Sotomayor, you're correct, not many, as the requirement is that there must be a serious question of substance, and if that is the case, then the district court can order a stay, both execution of the judgment of incarceration and The wonderful procedural quagmire you're throwing on courts below. The number of vacated convictions are tiny. The number of proceedings you want now with stay motions to be determined by trial courts is hundreds, if not thousands. That's what you're advocating. I'm sorry, Justice Sotomayor? You want every trial court to decide whether a stay is appropriate. No, I'm just describing what current procedure provides in terms of stays. But Let me ask you this question. Suppose we have a criminal trial, the jury comes in with a verdict of guilty, and then the trial judge said judgment vacated, there was insufficient evidence to convict. In that case, the defendant would not owe any fees to the State, right? That's correct, Your Honor. But the judge instead says there was sufficient evidence. Appeal. The court of appeals then says there was insufficient evidence, so we vacate the conviction. In that case, all of that money is kept, can be kept by the State. What's the difference whether the finding was made by the trial judge or by an appellate court? The difference is that at that time there was a lawful conviction in place, and that is what's required. And that's why the question in this case is whether this is a return of property that is properly thought of as the criminal defendant's or it's a claim for compensation. Just as in United States v. Gettinger where the conviction was overturned because the statute on which it was based was unconstitutionally vague, the court, this Court, denied compensation because there was no waiver of sovereign immunity. But we're not talking about compensation, we're talking about getting money back. Well, that's the, Justice Ginsburg, that's the question. Is this properly considered under State law or under the Constitution as a substantive matter, property of the criminal defendant, or is it not? And what's not? Breyer, It says in page 27 of their brief, they have three cases, one going back to 1832 of this Court, that says the law is that when you reverse the judgment in a civil case, I wouldn't know why I would apply it, too, as well, to criminal, the person on the other side gets the money back. And now, it doesn't say what law. And moreover, you heard your brother here say, well, the Colorado Supreme Court said that this wasn't a question here of whose property it was, it was a question of the remedy, the property belonging to the criminal defendant. So, one, what do you say about those cases? Two, what did the Colorado Supreme Court say as a matter of property law? Yes, Justice Breyer. First of all, the cases, there are cases that say upon reversal of an erroneous judgment, there can be restitution. But to say can, it says the law raises an obligation. But the one who has received the benefit of the erroneous judgment, to make restitution to the other party. The law creates an obligation, it doesn't say may. Respectfully, Justice Breyer, some courts use that specific formulation of language. This Court used that. This Court was the one that used it in 1832. In two cases, Justice Breyer, Atlantic Coastline Railroad, which is a Justice Cardozo case from 1935, and United States v. Morgan, which is a case from 1939, the Court overturned an order from the district court and yet declined to provide a refund because what the Court said is it had to remand for a hearing on the merits of the substantive dispute. One of Petitioner's own sources, a Tinker article. Breyer, did the Colorado Supreme Court say this is his money, but we don't have a remedy? Did it say this is our money and we don't have to have a remedy? What did it say? It said that these amounts are considered public funds such that a statute is required, providing that courts may draw on public funds to award these amounts. So what the Colorado Supreme Court necessarily decided was that this is not, under State law, property of the criminal defendant. Roberts, but that's a question, it seems to me, of you keep talking about compensation. The issue is restitution. And under normal equitable principles of restitution, it in fact still is the property of the person from whom the money has been taken away. And I wonder if your analysis has to be adjusted when you appreciate that it's not compensation, that's not sort of the normal State give us some money. Under equitable principles, it's State give me my money back. Yeah, Justice or Mr. Chief Justice, that is the question, is under the historical treatment of this issue, is this property properly considered return of money? The courts do say restitution. They also say that it is a claim of unjust enrichment that depends on factors including the merits of the case. One of Petitioner's own sources, a tainter article. Breyer, I suppose we go by what this Court said in 1832, which seems like historical tradition. Suppose I take that, unless you give me a reason not to, as stating what the law is. That's what it says. So what's your response to that? My response to that, Justice Breyer, is I respectfully, I don't think that's exactly what the law says. If the law says it, if Petitioner's establish a substantive due process right to this money back, we agree with them. Colorado law doesn't vindicate that particular substantive interest, and we're not arguing that it does. Sotomayor, I've never known the issue. I've never known us to wonder or call it a substantive due process right to own money. Money is property. We all have a right to own our property, correct? Yes, Justice Sotomayor. So I'm a little confused by what you're asking for. They're saying it's my money. We either agree with that or don't. If it is their money, then you need to do a procedure that comports with due process, correct? That's correct. And you don't deny that? I don't deny that, no. And so the question is whether under either State law, this is properly considered How about we borrow from Double Jeopardy? Once the judgment is void, you no longer have a basis to that property. It's theirs. They had – it was their money to begin with. The only basis you had to collect it or keep it was a constitutional conviction. Once it's voided, you have no basis to keep the money. And, Justice Sotomayor, I think that that wouldn't necessarily explain cases like Gettinger from 1927 when this Court denied that kind of a remedy, or Ex parte Morris is another example where the Court ordered that certain forfeited property be returned, but the Court said the Court has no authority to order the United States, property that had been placed in the United States, to refund. So that's the question, is – General, can I go back to what – I'm sorry, I interrupted you midstream. No. You said that's the question, as though something big was coming up. I think I've, Justice Kagan probably said it before. It's just a question of whether this is treated as a return of property or a claim on compensation from State funds. So you said to Justice Sotomayor, you said, we agree that if this were their money, we would have to refund it in normal ways, consistent with procedural due process. Yes, Justice Kagan. Okay. So it really all does depend on whether we think it's their money or it's your money. That's correct. So if this were your money, on this – on the simple theory of there once was a conviction, it once was valid, we collected the money at that time, and that makes it our money going forward forever and ever, no matter what happens to the conviction. If that's your theory, it's not only true, as the Chief Justice said, that you wouldn't have to provide any remedy or any process for getting that money back, right? You could just keep it and say, doesn't – you can prove your innocence, you cannot prove your innocence, too bad, it's our money.  I think you said that to the Chief. That's correct, Justice Kagan. And it would also be true, I would think, that even if that conviction were improperly gained, not just in the sense that it was later vacated, but let's say it was the State's fault that that conviction occurred. In other words, let's say, oh, I don't know, there was a Brady violation or something like that, it would still be your money. Justice Kagan, in that – that actually neatly illustrates the decisions that States like Colorado have to make. Before the Exoneration Act, for example, criminal defendants whose convictions were overturned for error and they were actually innocent had no remedy, except if they proved some sort of a wrong such as the one you're describing. Then they could sue for a constitutional tort. In fact, a significant case from Colorado had exactly that. A criminal defendant sued for a Brady violation and received millions of dollars in compensation. But what the State is not required to do is merely because the conviction is overturned, provide compensation for losses that occur attendant to a conviction that is overturned. And it's your – Roberts, does your analysis, why doesn't it apply to criminal fines? In other words, the fine for whatever the offense is, is, you know, $10,000. In other words, it's not money that they paid fees along with the process. It's the end of the process. You're convicted, you pay a $10,000 fine. Why don't when the conviction is overturned, why don't you say, well, you know, this is our money now, it's in the State treasury, you can't get it back because of sovereign immunity? Mr. Chief Justice, two points. These amounts here are not purely punitive, so that precise question isn't presented. But our line does not depend on the difference between punitive fines and payments such as these, and neither have past cases. Roberts, you say your line doesn't depend. Does that mean you could apply this rule to fines? Yes, Justice. Do you? Are fines in Colorado unredeemable once you're – once you put them in the treasury? As we understand the Colorado Supreme Court's decision, yes. Just as this Court held in Gettinger, that was a fine that was – that the Court did not repay, even though the conviction was invalidated for constitutional reasons, and the reason the Court didn't order the fine repaid was because of sovereign immunity. Breyer, so what happens then? I mean, I grant you have a tough side to this argument, because it doesn't seem very fair what you're doing. But the – you have a corporate criminal defendant, you can't put him in jail. And so what they do is they fine the corporation $15 million, and then the State says, by the way, why appeal? If you win, we're not going to give you the money back, as the Chief just said. We'll assert sovereign immunity. Now, there's something wrong with that. I'm trying to put my finger on it. Justice Breyer, if there's something wrong with that, then there was something wrong with those long – the cases decided previously. And this is the Supreme Court's decision. Maybe they were right in 1832, and then they went off on a wrong track. You're not – it doesn't – maybe those cases were wrong. I don't know. I have to go read them and figure it out. But it can't be that there's no point to an appeal, because we're not going to give you back the fine. Now, that – I stop right there, and then I'm asking – I don't know what you're – I have to ask him. And that's why his brief has several different arguments, because it's hard to figure out. But there's – okay. You want to say anything in response to this question? Justice Breyer, I understand what you're struggling with. We struggle with it as well. But the law in Colorado, supported by decisions of this Court and others in the 1800s and early 1900s, suggests that this is a question of whether the State has decided to provide this kind of compensation. And if the Court rules that this is a matter of substantive procedural – or, excuse me, substantive right under the Constitution, I think you do encounter very significant problems about why compensation isn't awarded for the serious deprivation of liberty that occurs under the Constitution. Alito, why does it matter who owns this money at this time under Colorado law? This was the defendant's money, and it was taken away from them. So if it – you say that at some point it ceased to be their money and it became the State's money. But then you have to show that it was taken away pursuant to due process. Consistent with due process. Yes, and the due process is, as Petitioners admit, and they did so below in their petitions for re-hearing to the Colorado Supreme Court, they said that the deprivations of their liberty and their property comported with due process because a conviction supported the imposition of cost fees and restitution. I believe my friend Mr. Banner said it again today. So that is the due process that led to the deprivation. Alito, how can a conviction – how can the conviction have been reversed if they were convicted consistent with due process? Your Honor, there were errors – there were errors in these trials, but the question is whether there was process sufficient to allow the conviction to attach, and certainly Petitioners don't argue otherwise, if there were defects sufficient enough that this was a wrongful deprivation of liberty. For example, like the Manuel v. City of Joliet case this Court encountered, there would be a claim for compensation due to a wrongful defect in the due process in the procedures that led to that deprivation. But the question here, there was no wrongful conduct that occurred. There was an error that occurred. And the way that this Court's precedents have treated that is not as a return for property, but as a claim for compensation. Robertson, why isn't it a violation of the Takings Clause? For the same sole property shall not be taken without just compensation. If you're going to ask for any procedure or process, just give me just compensation. Chief Justice Rottweiler, Mr. Chief Justice, that's why the tax cases that Petitioners cite don't apply here either. That's the precise issue there where there is simply no process given before the taking occurs. Here, the criminal process supported the conviction, and that was an appropriate conviction at the time it was entered. And again, if that were true, Mr. Chief Justice, it wouldn't explain why there's no constitutional requirement to provide compensation for the deprivation of liberty that occurs. Robertson, I mean, what are you going to do? I mean, you can't give them back whatever time they've spent in jail. You just can't do it, but you can give them the money back. That's true, but you can compensate them for it. And certainly for a very long time, the common law and other principles of jurisprudence have supported the notion that you can either order restitution or some other compensation to account for a deprivation such as a deprivation of liberty. And so if the rule were that this is Petitioner's property, and it was – it certainly was Petitioner's liberty before it was properly, although – or not wrongfully, although erroneously taken, it's unclear why Petitioner's principle wouldn't apply to that same question. Robertson, was there any – one source of the difficulty we're having, it seems to me, is that the Exoneration Act was addressed to some – a situation very different than what we have here. It was addressed to, you know, someone wrongfully imprisoned for 20 years, and the State felt some obligation to remedy that, at least in a symbolic way. But in order to qualify for that, you do need to show all these other things. And, I mean, is it completely settled? I guess we have the decision from the Colorado Supreme Court that that same act applies, and this strikes me as a very different situation. Well, Mr. Chief Justice, I agree with you that the substantive right encompassed by the Exoneration Act is very narrow, and it doesn't cover the claimed right that's at issue in this case. And what the Colorado Supreme Court told us is that there is no other statutory mechanism for the kind of compensation that Petitioners are seeking in this case. So I agree with you, the Exoneration Act is very narrow, and it is not addressed to the State. Roberts Thanks for agreeing with me. I don't think that's what I said. Roberts Okay. Roberts I guess what I said is that by its — its — as I understand the background, at least, the act was not addressed to this specific situation. It was addressed to a different situation. And yet the Court below has interpreted it far more broadly, not narrowly, but broadly, to cover a very different situation. I don't — Mr. Chief Justice, I don't think that's necessarily a fair understanding of what the Colorado Supreme Court was thinking of. What the Colorado Supreme Court was thinking of was where is the statutory authority to order this type of refund? The Court hadn't really encountered this situation before, and so it looked and it found only the Exoneration Act. So what it concluded is that as a matter of substance, compensation like the kind of compensation that Petitioners are seeking in this case is available only on a claim of actual innocence. So I'm agreeing with you because, yes, the statute is that narrow, but the Colorado Supreme Court determined that as a matter of law, this is public property, and there must be a proper claim for compensation against State funds, and there wasn't one in this case. Kagan General, you said a couple of times that if we were to look at this as this is not public property once the conviction is vacated, then instead it once again becomes the criminal defendant's property, the acquitted defendant's property. If that were true, what kind of procedure would you have to set up to return the property, do you think? Justice Kagan, I think it would be fairly minimal. I think it would involve perhaps a motion filed in the district court. I think the only burden that could perhaps be placed on a criminal defendant would be proving the amounts that were in fact taken from the defendant, and then there could be, for example, time limits put in place. But if this truly is Petitioner's property, they would have to be minimal requirements. Ginsburg Which is what they did. They made a motion. Justice Kagan That's correct. So it would be similar to the route that they attempted to take, but the courts below held that they did not have authority, except in the case of Madden, just for the fees. Roberts I thought you told me that it was not their property. In other words, but even if it was, once it's in your treasury, they can't get it back because of sovereign immunity. Kagan Chief Justice Roberts or excuse me, Mr. Chief Justice, if this is their property, if they have a present entitlement to it, it is their property, then due process requires them some procedure to get it back. And that's the question. Is this, as a matter of substantive law, their property, or is it public funds, as the Colorado Supreme Court held, and therefore, there can only be a mechanism for compensation from public fund for those losses? And so that is the key question in this case. If there are no further questions. Roberts Thank you, Mr. Yarger. Mr. Banner, you have four minutes. Banner Okay. Just a couple of quick things. First of all, this – I believe that this argument is the first time in this litigation that the State has come out and said this is – this money belongs to the State. The Colorado Supreme Court did not say that. The Colorado Justice It doesn't say the opposite, either. Banner It doesn't say the opposite. Justice Breyer All right. So what do we do about that? Banner But the – but the – what the Colorado Supreme Court did was to skip over that question and proceed straight to the next logical question that would occur if it was our – the money was our property, which is, is the Exoneration Act an adequate procedure for returning it? Justice Breyer Because that could be consistent with the money's their property, but they have an obligation to give it back. Banner And it doesn't – they don't have to provide any procedure to give it back, right? So the question that the Colorado Supreme Court actually decided, the one thing – the issue, I mean, the part of the decision that we're attacking is that this is an adequate procedure for the return of the property. Okay. That's my first point. The only thing – Breyer Did you use the word return? I'm looking for something here that – I mean, you see what's – Banner Yeah, no, I understand. Breyer I'm looking for something here in the opinion that will – that I could just say, okay, see? They concede that it is this man's property. They concede it. But I haven't found that sentence. That's my – Banner No, unfortunately, they don't explicitly concede it. They assume it, is what we would say. Okay. I know that's not helpful to you. All right. The other – the other – the other – the other quick point I want to make is I just want to explain very briefly why sovereign immunity has never been thought to be – provide any bar to these refunds. And that is, we're not asking for the right to bring a new lawsuit against the State. The State already brought these suits against us when it charged Nelson and Madden with crimes, right? We're not – we're not seeking a new judgment against the State. We already have judgments in these cases, judgments in our favor. We won, and yet the State is holding on to our money as if we lost. We're not seeking compensation. We're just seeking a refund of the money that we paid pursuant to judgments that no longer exist. Breyer Well, wait. As long as you have a minute, can you – I mean, that's the point. If you go to your case that you like, the Bank of Washington v. the United States, 1832, and it says the law, what law? Feigin The common law. I believe the common law. I believe all those cases are about the common law. Breyer I'm afraid of, so you can – yeah, yeah, yeah. Feigin Yeah, yeah, yeah. Thank you. Roberts Thank you, counsel. The case is submitted.